## No. C-637

**Walter Slack, d/b/a Walter Slack Realty v. Ingvar Sodal and Jofrid Sodal**

(547 P.2d 923)

Decided March 29, 1976.

Lynn W. Toedte, for petitioner.

Taussig & Cobb, Paul Snyder, Jr., for respondents.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

This is a review after granting certiorari of an affirmance by the Colorado Court of Appeals of the trial court's judgment in favor of the plaintiffs. *Sub nom. Sodal v. French*, 35 Colo. App. 16, 531 P.2d 972 (1974). Plaintiffs were purchasers of a residence in Boulder and the losing defendant was real estate agent in the sale. We affirm.

The sellers of the home had listed it for sale with the defendant. The property consists of a residence on approximately one acre of land just outside the City of Boulder. The plaintiffs purchased the property in July, 1971, and this action was commenced in June, 1972 against the sellers and the agent. The plaintiffs alleged that the well on the property, as a source of domestic water, was not adequate to supply the needs of a family of five, contrary to representations that had been made to them prior to the closing of the sale.

The trial court entered judgment against the agent, concluding that he had fraudulently misrepresented the production capacity of the well. The court dismissed the action against the sellers, finding that they "did not knowingly conceal any material facts concerning the water supply from the Sodals prior to the sale."

On the issue of damages, the trial court found that the evidence presented showed that "the chances of producing a well on the plaintiffs' property is perhaps 50-50 and certainly not more than 60-40." The court found that, as a measure of damages, this was "far too speculative," and held that the correct measure should by "the cost of acquiring [from the City of Boulder] an adequate supply of *domestic* water." (Emphasis added.)

This cost was stipulated to be $1553.65.

Plaintiffs and their predecessors *irrigated* the property with water from the Silverlake Ditch Company, in which they owned a share of stock. As a condition to connecting to the city water supply, the plaintiffs were required to sell the share of stock in the ditch company to the City of Boulder for $25. The trial court found that the damages by reason of the increased costs of irrigation were in the amount of $2,500 making the total amount of compensatory damages $4,063.65. The trial court denied exemplary damages.

The only issues before this court are the amount of damages and the measure thereof.[1] The defendant contends that the court of appeals erred in affirming the trial court's application of the "cost to conform rule" in computing damages. The court of appeals noted that the trial court used as a measure of damages the cost necessary to put the property in the condition that would bring it into conformity with its value as represented. Citing *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964), the court of appeals noted that the possibility of bringing in a replacement well had less than 60% probability of attainment. It stated that the Sodal's "should not be forced to pursue one course of action where another is reasonable and will alleviate or cure the consequence of fraud or misrepresentation."

The defendant argues here that the rule to be applied in measuring damages should have been the "benefit of the bargain" rule. This would be the difference between the value of the property as represented and the actual value thereof. The defendant contends that the plaintiffs failed to prove any difference in value, and further failed to prove that drilling a new well could not be successfully accomplished. He notes also that the plaintiffs had not, at the time of trial, connected their property to the Boulder water supply, nor did they state that they intended to do so. The court should have awarded no damages at all, he concludes, or only nominal damages. Under the circumstances here, we disagree.

Traditionally, the "benefit of bargain" rule is applied in fraud cases such as this. *Corder v. Laws*, 148 Colo. 310, 366 P.2d 369 (1961); *Otis & Co. v. Grimes*, 97 Colo. 219, 48 P.2d 788 (1935). However, several opinions of this court show that the rule may be applied in varying ways. This court recognized in *Carpenter v. Donohoe*, 154 Colo. 78, 388 P.2d 399 (1964) that:

"The cost of putting the property in the condition that would bring it into conformity with the value of the property as it was represented to be would satisfy this rule regarding the measure of damages."

---

[1] Other portions of the court of appeals opinion are not before us and we, therefore, do not pass upon them. We do wish to mention that we think that *Morrison v. Goodspeed*, 100 Colo. 470, 68 P.2d 458 (1937), correctly states the law as to the elements of fraud.

In *Glisan v. Smolenske*, 153 Colo. 274, 387 P.2d 260 (1963), this court noted that reasonable expenditures of a buyer to bring property into conformity with the implied warranty may be an accurate measure of the buyer's damages and is another way of arriving at an amount representing the difference in actual value and that value as represented.

As in *Carpenter* and *Glisan*, the trial court here attempted to arrive at an amount which would bring the property as close to conformity as possible. We should not reverse the trial court's finding in effect that the plaintiffs had no other reasonable alternative than to attach to the city water supply. The trial court applied the rule of *Carpenter* reasonably, using the evidence submitted. It thereby arrived at a fair and approximate amount of the damages suffered by plaintiffs.

Judgment affirmed.